Stephen D. KLEINHANS, Plaintiff-Appellant,

v.

LISLE SAVINGS PROFIT SHARING TRUST, et al., Defendants-Appellees.

No. 85–2860.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1986.

Decided Jan. 16, 1987.

challenged the internal review procedures applied in his case.

Thomas J. Cisar, Oak Brook, Ill., for plaintiff-appellant.

Joseph F. Griffin, Hopkins & Sutter, Chicago, Ill., for defendants-appellees.

Before COFFEY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

The Plaintiff appeals the district court's grant of summary judgment to the defendants on his claim for the statutory penalty available under § 502(c) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(c), and the denial of his motion to amend his complaint to state a claim for punitive damages under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). We affirm.

## I

On January 27, 1983, the plaintiff tendered his resignation [1] as treasurer and vice president of Lisle Savings and Loan (Lisle) to Joseph Renn, president of Lisle. Kleinhans since his employment with Lisle in 1971 has participated in the Lisle Savings Profit Sharing Trust (the "Trust") and also acted as a trustee of the Trust. His participation in the Trust as well as his duties as a trustee were also terminated as of the date of the acceptance of his resignation.

There is no dispute that according to the terms of the Trust, the plaintiff's interest in the Trust was fully vested at the time of his resignation. Furthermore, the Trust agreement also provided that he was entitled to only those benefits which had accrued to his account as of the date specified in the Trust for the allocation of benefits accrued—June 30 of each year. Accordingly, Kleinhans was entitled to benefits that had accrued to his account as of June 30, 1982, the allocation date prior to his termination from the plan. The terms of the Trust also provided that the Trust had 60 days from the close of the plan year, June 30, in which a participant terminates his or her participation in the trust to distribute accrued benefits. Thus the Trust had until August 30, 1983, to distribute the plaintiff's share of his accrued benefits.

Upon the defendants' acceptance of Kleinhans' resignation, the plaintiff, in a letter dated February 17, 1983, requested immediate distribution of his accrued Trust benefits. The defendants failed to respond to this letter of February 17, 1983, requesting distribution of his benefits as they claimed no response was necessary because Joseph Renn had previously assured the plaintiff that he would receive his benefits in accordance with the terms of the Trust.[2]

Kleinhans once more requested distribution of his benefits from the Trust on July 11, 1983, even though under the terms of the Trust he was not yet entitled to them. Kleinhans did not request that a date be set for distribution. A letter to Kleinhans from the attorney for the defendants dated July 28, 1983 neither denied his trust benefits nor set a date for the distribution of the same, but merely acknowledged having received his request for his trust benefits. The letter did suggest that any Trust benefits owing to the plaintiff were subject to unspecified claims that the defendants may have against the plaintiff Kleinhans.[3] The letter concluded stating that the defendants were willing to settle "these claims in conjunction with any monies that may be due" from the Trust.

On October 19, 1983, Kleinhans' attorney advised the defendants by letter that because discussions with their attorney "demonstrated that no proceeds will be paid to Mr. Kleinhans" the defendants' "willful refusal to pay" constitutes a violation of ERISA § 503 (29 U.S.C. § 1133). After the defendants had failed to respond to this letter for over two months, the plaintiff filed suit in federal district court on December 23, 1983, alleging that the defendants violated the terms of the Trust and § 503 of ERISA by refusing to distribute plaintiff's Trust benefits, and that the defendants' failure to respond to his requests for distribution of his Trust benefits constituted a violation of ERISA § 502(c), 29 U.S.C. § 1132(c) entitling him to the statutory pen-

---

**1.** Joseph Renn, in a letter dated February 12, 1983, accepted Kleinhans' resignation effective as of February 16, 1983, because of Kleinhans' "negative comments concerning this association to employees and business contacts, and your [Kleinhans] uncooperative attitude toward transition personnel...."

**2.** Prior to Kleinhans' resignation, the Savings and Loan had been experiencing cash shortages and Kleinhans alleges that he believed the defendants considered him responsible for these shortages. Kleinhans claims that the defend-

ants told him he would not receive his benefits until such time as the cash shortages were satisfied. Thus, he alleges that the defendants withheld payment of his benefits to force him to settle the cash shortages. Further, Kleinhans alleges that the deviations from Lisle's formal policy of distributing benefits within 30 days of an employee's termination were also part of the defendants' scheme of trying to force him to settle the cash shortages dispute.

**3.** *See* note 2, *supra.*

alty provided by ERISA § 502(c), 29 U.S.C. § 1132(c).

The defendants moved for summary judgment on April 22, 1985, alleging that they were willing to pay Kleinhans the benefits he was entitled to under the Trust,[4] and that the plaintiff had never made a request for "information" from the defendants as required under ERISA § 502(c), 29 U.S.C. § 1132(c) to trigger liability for the statutory penalty provided for by ERISA. Kleinhans opposed the defendants' motion for summary judgment and moved the district court to allow him to amend his complaint to state a claim for punitive damages against the defendants under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), alleging that the defendants acted with malice or wanton indifference in their refusal to distribute plaintiff's Trust benefits within the time provided for distribution in the Trust.

The district court in an order dated September 30, 1985, dismissed the plaintiff's claim for unpaid Trust benefits and granted the defendants' motion for summary judgment against the plaintiff on his statutory penalty claim. The court determined that since Kleinhans had accepted payment of $53,052.51 plus interest on July 9, 1985, his claim against the defendants had been satisfied and thus he no longer had a claim against the defendants for benefits owing. Further, the district court held that because Kleinhans had never made a request for "information" from the defendants, no basis existed for invoking the statutory penalty made available by ERISA § 502(c), 29 U.S.C. § 1132(c). The district court denied the plaintiff's motion to amend his complaint to state a claim for punitive damages because punitive damages are not available under the provisions of ERISA. Furthermore, if punitive damages were available under ERISA, imposing them in this case would unduly prejudice the defendants in view of the fact that plaintiff's motion to amend was made more than six

months after discovery had been closed and 18 months after the filing of his initial complaint.

Kleinhans appeals the district court's grant of summary judgment to the defendants on his statutory penalty claim and the district court's denial of his motion to amend his complaint to state a claim for punitive damages.

## II

### STATUTORY PENALTY CLAIM

The participants in an ERISA plan have several alternative ways to obtain redress for violations of ERISA. With respect to violations of those sections of ERISA that require plan administrators to make information available to participants, a participant has two options in pursuing his redress, the choice of which will depend on the particular facts of a participant's case. Where the administrator fails to make information available to a participant as required by ERISA, whether the obligation is automatic or triggered by a request from the participant, the participant under § 502(a)(3), 29 U.S.C. § 1132(a)(3), can force the administrator to comply with the provisions of ERISA and to make available the information which the participant seeks. Section 1132(a)(3) provides:

A civil action may be brought—

&ast; &ast; &ast; &ast; &ast; &ast;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

ERISA § 502(a)93), 29 U.S.C. § 1132(a)(3). The relief obtainable under this provision is limited to that which is necessary to provide the participant with the information he is entitled to under ERISA; a participant is not entitled to a substantive remedy for

---

**4.** Kleinhans accepted payment of $53,052.51 plus interest on July 9, 1985 in satisfaction of

his accrued benefits.

establishing a procedural violation on the part of the administrator. *Wolfe v. J.C. Penney Co.*, 710 F.2d 388 (7th Cir.1983); *Grossmuller v. International Union, U.A.W.*, 511 F.Supp. 709 (E.D.Pa.1981), *affirmed in part*, 715 F.2d 853 (3rd Cir.1983). Thus, if the defendants as administrators of the Trust failed to provide information under the automatic provisions of ERISA or pursuant to a request for information by Kleinhans, § 1132(a)(3) provides an appropriate means for Kleinhans to obtain the information he seeks. However, if the administrator ultimately provides the participant with the information, § 1132(a)(3) does not provide the participant with the means to penalize the administrator for any actual violation of ERISA which might have delayed (or prevented) the participant from obtaining the information. Accordingly, if the information has been provided, the participant must resort to § 1132(c). Section 1132(c) allows the court, in its discretion, to penalize an administrator up to $100 per day for each day the administrator fails to comply with the requirements of ERISA. Section 1132(c) provides:

> Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

ERISA § 502(c), 29 U.S.C. § 1132(c).

▮ The operative words "fails or refuses to comply with a request for informa-

tion" limit the availability of the § 1132(c) statutory penalty to a participant to those cases where the participant has in fact affirmatively requested information. Although § 1132(c) provides that imposition of the statutory penalty lies within the discretion of the court, that discretion can only be exercised where the facts of a case establish an actual violation of § 1132(c). Thus, the conduct and intent of the administrator in withholding information he or she was required to provide under ERISA would be a consideration relevant to a court's determination whether the case in question justifies the imposition of the statutory penalty. However, conduct and intent have no bearing on the court's determination whether its discretionary power under § 1132(c) has in fact been triggered. Initially, the participant must establish (1) that the administrator was required by ERISA to make available to the participant the information the participant requested, and (2) that the participant requested and the administrator failed or refused to provide the information requested before a court will consider imposing a statutory penalty. *Clouatre v. Lockwood*, 593 F.Supp. 1136 (M.D.La.1984). Because Kleinhans failed to fulfill one of the prerequisites for triggering the defendants' liability for the statutory penalty—requesting "information" concerning the Trust or his rights under the Trust that the defendants were required to make available to him—we hold that the district court properly granted the defendants' motion for summary judgment on the plaintiff's statutory penalty claim.[5]

▮ The plaintiff contends that the requests for distribution of his Trust benefits which he made on February 17, July 11, and October 19, 1983, constituted "requests for information" that the terms of the

---

**5.** We do not condone the conduct of the defendants in failing to respond to Kleinhans' inquiries concerning his Trust benefits. The defendants' failure to respond to Kleinhans' first letter, and the suggested settlement of claims referred to in the defendants' response to his second letter,

raise more than a suspicion as to whether or not the defendants were trying to force a settlement by requiring Kleinhans to bear the burden of initiating litigation to recover what he was duly entitled to receive as a participant in the Trust plan.

Trust[6] and section 1133[7] required the defendants to provide to the plaintiff. According to the plaintiff, the defendants' failure to respond to his demands for distribution constituted a denial of his claim and thereby obligated the defendants under provision 9.11 of the Trust and § 1133 to provide him with the reasons for denying his claim. Kleinhans argues that his initial demands for payment were "requests" for information that triggered the defendants' obligation to provide him with "information," meaning the reasons for denying him payment. Thus, the plaintiff asks us to expand and enlarge upon his request for information to include the reasoning for the denial of his benefits. This we refuse to do because as of that date the defendants had not refused to pay his benefits for no legal demand had been made for the same.

The courts that have considered whether a demand for benefits or payment constitutes a "request" for information that would give rise to liability under § 1132(c) should the plan administrator fail to respond, have concluded that such a demand does not constitute a "request for information" for purposes of § 1132(c). *Januski v. Mortell Company, Inc.,* (N.D.Ill.1985) [Available on WESTLAW, DCTU database] (letter claiming that participant was entitled to more benefits than had been paid out was not a request for information); *Clouatre v. Lockwood,* 593 F.Supp. 1136, 1140 (M.D.La. 1984) ("the request for benefits does not satisfy the request element that is needed [to invoke the administrator's duty to provide information]"). Section 1132(c) provides for the imposition of a penalty if the plan administrator fails or refuses to comply with a participant's request for information the administrator is *required* by ERISA to provide. A request for distribution of benefits—a "claim"—does not place an obligation on the administrator to provide in-

---

**6.** Section 9.11 of the Trust provides:

Any claim for benefits under the Plan shall be made in writing to the Trustee with delivery of any such claim to be made to the Association. If such claim for benefits is wholly or partially denied, the Trustees shall, within thirty (30) days after receipt of the claim, notify such Participant or beneficiary of the denial of the claim. Any such notice of denial shall:
(1) be in writing.
(2) be written in a manner calculated to be understood by the claimant or beneficiary.
(3) contain the specific reason or reasons for denial of the claim.
(4) contain a specific reference to the Plan provision upon which the denial is based.
(5) contain a description of any additional material or information needed to perfect the claim with an explanation of why such material is necessary, and
(6) contain an explanation of the claim review procedure stated in the Plan.

Within sixty (60) days after the receipt by the Participant or beneficiary of a written notice of denial of claim, the Participant or beneficiary may file a written request with the Association that it conduct a full and impartial review of the denial of the claim for benefits. The time limitation specified herein may be extended by a written request for an approval by the Association for any reasonable time, taking into account the nature of the benefit subject to the claim and any other attendant circumstances surrounding such claim. Any request for an extension not denied in writing within fifteen (15) days after receipt by the Association shall be deemed approved for an additional thirty (30) days.

The Association shall deliver a written decision on the claim within thirty (30) days after the receipt of the above mentioned request for review, except that if there are special circumstances, such as a need to hold a hearing if deemed necessary by the Association, which require an extension of time for processing, the aforementioned thirty (30) day period shall be extended to sixty (60) days. Any decision rendered under this subsection of the Plan shall:
(1) include the specific reason or reasons for the decisions, and
(2) contain a specific reference to the Plan provision or provisions upon which the decision is based....

**7.** Section 1133 provides:

In accordance with regulations of the Secretary, every employee benefit plan shall—
(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

formation *until* such time as the claim is denied. When a claim is denied, § 1133 requires that the administrator provide the participant with an explanation and his reasoning for denying the claim. At this time a request for an explanation can be made and the failure of the administrator to comply with that request would give rise to liability under § 1132(c). But until such time as the claim is denied, no obligation exists on the part of the administrator to provide an explanation (i.e., "information"), and thus no basis for imposing liability pursuant to § 1132(c) exists. Thus, under § 1133, the defendants had no obligation to provide the plaintiff with an explanation of their decision concerning his claim *until* they had in fact denied his claim. Once the claim has been formally denied, they are obligated to provide the plaintiff with an explanation. But even at this point, without the plaintiff's request for information (i.e., an explanation for denying the claim), no § 1132(c) liability exists absent a plaintiff's request for the explanation he was entitled to under § 1133, *and* the failure of the defendants to provide that explanation within thirty days of the plaintiff's request. If the plaintiff had made a request, and the defendants had failed or refused to comply with that request, the district court could have exercised its discretion and imposed the statutory penalty.

■ Therefore, even were we to determine that the defendants' failure to respond to Kleinhans' letters requesting distribution of his Trust benefits constituted a denial of the plaintiff's claim, as the plaintiff argues we should, the plaintiff made no subsequent request for an explanation of that denial and therefore failed to trigger the defendants' liability under § 1132(c). The letters sent by Kleinhans to the defendants on February 17, and July 11, 1983, cannot be construed as anything other than demands for payment;[8] no request for an explanation as to the defendants' conduct can be implied from the letters. Plaintiff's attorney's October 19, 1983 letter to the defendants is nothing more than a statement of the defendants' position and a statement regarding his intention to institute legal action. Like the earlier letters, the October 19th letter failed to request information the defendants were required to provide nor does it imply that Kleinhans sought an explanation from the defendants of their failure to distribute his benefits. Thus, the plaintiff has failed to establish the operative fact necessary for the imposition of the statutory penalty made available by § 1132(c).

The plaintiff's assertion that the intent of the defendants in failing to respond to his requests for distribution of his Trust benefits was to unjustifiably delay his receipt of the benefits to which he was entitled is not relevant to the determination of whether the defendants are subject to liability under § 1132(c). The Plaintiff's allegation that the defendants intended to force him to settle the cash shortages claim would only become a factor once a violation of § 1132(c) had been established and the court's discretion to impose a penalty triggered.[9] As we have determined that the plaintiff failed to establish a violation which would subject the defendants to liability under § 1132(c), we have no reason to consider the intent of the defendants in failing to respond to Kleinhans' demand for distribution of his Trust benefits.

8. Kleinhans' letter of February 17, 1983 stated: "I request an immediate total distribution of my proceeds from the Lisle Savings Profit Sharing Trust as is an established procedure of the profit sharing plan." His letter of July 11, 1983 stated "I request total and immediate distribution of my proceeds from the Lisle Savings and Loan Profit Sharing Plan, as was due June 30, 1985."

9. Kleinhans' interpretation of § 1132(c) ignores the fact that the nature of the defendants' conduct is not relevant to triggering the defendants' liability for the statutory penalty. Kleinhans' reliance on *Porcellini v. Strassheim Printing Co.,* 578 F.Supp. 605 (E.D.Pa.1983), and *Lefebre v. Westinghouse Elec. Co.,* 549 F.Supp. 1021 (D.Md. 1982), to support his assertion that the statutory penalty should be imposed in this case in view of the unjustifiable conduct of the defendants is misplaced for that reason. In both *Porcellini* and *Lefebre,* the court found a violation of the request provision in § 1132(f) *before* it considered the conduct of the defendants in its decision to impose a penalty.

## III

### MOTION TO AMEND COMPLAINT

Kleinhans also argues that the district court improperly denied his motion to amend his complaint to state a claim for punitive damages under ERISA § 1132(a)(3) against the defendants. Federal Rule of Civil Procedure 15(a) provides that:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."

The Supreme Court has explained that amendments should be granted in:

"... the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue *prejudice* to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"

*Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962). The district court concluded after examining the record that Kleinhans had failed to provide a reasonable explanation for his six-month delay in seeking to amend his complaint after the close of discovery and eighteen months af-

ter the filing of his original complaint. The district court further determined that even if Kleinhans' proffered amendment did not unduly prejudice the defendants, the amendment would be "fruitless" because punitive damages were not recoverable under § 1132(a)(3) of ERISA.

The decision to deny or grant a motion to amend is within the discretion of the trial court. *Foman*, 371 U.S. at 181, 83 S.Ct. at 229. Thus "a district court's refusal to permit amendment of the complaint may be set aside on appeal only for an abuse of discretion." *Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 353 (7th Cir.1982). Accordingly, we review the reasons the district court provided for denying Kleinhans' motion to amend to determine whether the denial constituted an abuse of discretion.

Kleinhans moved for leave to amend his complaint to state a claim for punitive damages after the defendants moved for summary judgment. The proposed amendment is not based on any information that was unknown to Kleinhans eighteen months earlier when he filed his original complaint. The motion to amend was made six months after discovery closed and Kleinhans by claiming that the granting of his motion would not require that discovery be reopened, in effect, admits that he could easily have brought this claim long before the defendants moved for summary judgment.[10] In view of Kleinhans' failure to adequately explain the unreasonable delay in moving to amend his complaint to state a claim for punitive damages when all of the information necessary to stating such a claim has been available to him for eighteen months, we agree with the judgment and reasoning of the district court that Kleinhans' motion "represents an apparent attempt to avoid the effect of summary judgment [on his other claims]." Because granting Kleinhans' motion to amend after such an inexcusably long delay would unduly prejudice the defendants, we hold that

---

**10.** However, as defendants note, they would require additional discovery in order to properly prepare a defense to this claim.

the district court did not abuse its discretion in denying Kleinhans' motion to amend his complaint to state a claim for punitive damages.

Further, Kleinhans' proffered amendment would be futile if punitive damages are not recoverable under § 1132(a)(3) [11] of ERISA. Although the Supreme Court has not directly addressed the availability of punitive damages under § 1132(a)(3), it has determined that punitive damages are not recoverable under § 1132(a)(2).[12] *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). The majority of the courts that have considered the availability of punitive damages under § 1132(a)(3) have concluded that Congress did not intend punitive damages to be recoverable under § 1132(a)(3). *See Maxfield v. Central States Health, Welfare & Pension Funds*, 559 F.Supp. 158, 160 (N.D.Ill.1982) ("while the district courts are not unanimous on the issue of the availability of punitive damages for a claim under ERISA [this case] falls within the majority view denying such relief"). *See also, Powell v. Chesapeake & Potomac Telephone Co.*, 780 F.2d 419 (4th Cir.1985) (punitive damages not available under § 1132(a)(3)); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir.1981) (punitive damages not available under ERISA); *Dedeaux v. Pilot Life Ins. Co.*, 770 F.2d 1311 (5th Cir.1985) (punitive damages neither expressly nor implicitly authorized under ERISA).

The precise question presented in a claim for punitive damages under § 1132(a)(3) is whether Congress intended the phrase "other appropriate equitable relief" as used in § 1132(a)(3) to include punitive damages. In *Dependahl*, the Eighth Circuit noted:

"We do not think punitive damages are provided for in ERISA. Ordinarily punitive damages are not presumed; they are not the norm, and nowhere in ERISA are they mentioned. If Congress had desired to provide for punitive damages, it could have easily so stated, as it has in other acts."

653 F.2d at 1216. As the Supreme Court explained in *Russell:*

"We are reluctant to 'fine-tune' an enforcement scheme crafted with such evident care as the one in ERISA. As we stated in *Transamerica Mortgage Advisors, Inc. v. Lewis (TAMA)*, 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979): '[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' See also *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571–574, 99 S.Ct. 2479, 2486–2488, 61 L.Ed.2d 82 (1979). 'The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.' *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. [77], at 97, 101 S.Ct. [1571], at 1583 [67 L.Ed.2d 750 (1981)].

In contrast to the repeatedly emphasized purpose to protect contractually defined benefits, *there is a stark absence—in the statute itself and in its legislative history—of any reference to an intention to authorize the recovery of extra-contractual damages.*"

105 S.Ct. at 3093 (emphasis added).

■ Furthermore, the legislative history of ERISA makes clear that Congress intended to incorporate into ERISA fiduciary principles developed in the law of trusts. *Sommers Drug Stores v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1463 (5th Cir.

---

**11.** Section 1132(a)(3):

A civil action may be brought

\* \* \* \* \* \*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

**12.** Section 1132(a)(2):

A civil action may be brought

\* \* \* \* \* \*

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

1986). *See also,* H.Rep. No. 533, 93d Cong., 1st Sess. (1973), *reprinted in* 1974 U.S.Code Cong. and Ad.News 4639, 4649, 4651. Punitive damages are generally not recoverable from trustees under the law of trusts for breach of fiduciary duty. *See, e.g., Powell,* 780 F.2d at 424. As the Fifth Circuit concluded in *Sommers:*

> "Restatement (Second) of Trusts supports this view. Section 205 provides:
>
>> If the trustee commits a breach of trust, he is chargeable with
>>
>> (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or
>>
>> (b) any profit made by him through the breach of trust; or
>>
>> (c) any profit which would have accrued to the trust estate if there had been no breach of trust.
>
> Restatement (Second) of Trusts § 205 (1959); see also *id.* § 206 (providing same remedies for breach of duty of loyalty); 3 A. Scott, The Law of Trusts secs. 205–206 (1967) (recognizing the three measures of recovery in Restatement (Second) § 205). Other sections of the *Restatement* apply the principles of § 205 to particular breaches, but none authorizes a different or additional measure of damages. The *Restatement,* therefore, suggests that the law of trusts does not permit punitive damages for breach of fiduciary duty. It follows that ERISA, which incorporates the principles of trust law, does not do so either."

793 F.2d at 1464.

 We agree with the district court's determination that Kleinhans' amendment would prove "fruitless" because punitive damages are not recoverable under § 1132(a)(3) of ERISA. Neither the language of statute itself nor its legislative history suggest that Congress intended punitive damages to be recoverable under § 1132(a)(3) of ERISA. Further, as the Fifth Circuit noted in *Sommers,* punitive damages generally are not available under the law of trusts in an action for breach of a trustee's fiduciary duty. Because Con-

gress intended the interpretation of ERISA to be guided by principles developed under the law of trusts, absent express language to the contrary in the statute, we will not interpret ERISA to provide punitive damages for breach of a trustee's fiduciary obligations where such damages are not generally available under the law of trusts. Thus, we hold that the district court properly denied Kleinhans' motion to amend his complaint to state a claim for punitive damages because such an amendment, coming six months after discovery had been closed and eighteen months after the original complaint was filed with no reasonable explanation for the delay, could unduly prejudice the *defendants and would be fruitless* since punitive damages are not available under ERISA.

## IV

The order of the district court granting the defendants' motion for summary judgment and denying Kleinhans' motion to amend his complaint is affirmed.