**Kaluzna WINCHESTER,**
**Plaintiff–Appellant,**

**v.**

**PENSION COMMITTEE OF MICHAEL REESE HEALTH PLAN, INCORPORATED PENSION PLAN, Defendant–Appellee.**

**No. 90–1725.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 1991.

Decided Sept. 11, 1991.

---

J. Peter Dowd (argued), City of Chicago Board of Education, Chicago, Ill., for plaintiff-appellant.

Eric A. Oesterle, Roger K. Heidenreich, Leslie J. Khoshaba, Sonnenschein, Nath & Rosenthal, Nancy G. Lischer, Daniel K. Ryan, Linda K. Horras, Kendall Griffith, Hinshaw & Culbertson, Chicago, Ill., for defendant-appellee.

Before WOOD, Jr. and KANNE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

KANNE, Circuit Judge.

Kaluzna Winchester, a former employee of Michael Reese Health Plan, Inc., and former participant in the Michael Reese pension plan, was terminated from her job on February 18, 1986. On April 22, 1986, approximately two months after her termination, Ms. Winchester sent a written request to Michael Reese for "a copy of the health plan's pension policy and vesting information, and any other information ... to familiarize [her]self with the plan." On May 1, 1986, Michael Reese replied by sending to Ms. Winchester a copy of two pages from a Michael Reese Health Plan employee manual which addressed pension benefits. Apparently Ms. Winchester was not satisfied with this information, on May 12, 1986, she sent a second request for information. In this second letter she requested "vesting information and any other information I may need to familiarize myself with the plan itself." She also indicated that her legal counsel had advised her that the information must be forwarded to her within thirty days or penalties and/or fines may be incurred.[1] In response, Michael Reese indicated on May 19, 1986, that authorization had been received to release pension funds to Ms. Winchester and that those funds would be available within the next ten working days. In the May 19th letter, Michael Reese also invited Ms. Winchester to review the pension plan summary description when picking up her pension funds. After receiving the letter, Ms. Winchester sent yet a third request on June 5, 1986, asking for a copy of "all documents regarding pension plan policies and description including the vesting information and a statement of my rights under the plan." She stated that she had "a right to this information so that I may determine what benefits are available to me ... if I

---

1. The Michael Reese pension plan is regulated by ERISA which provides that,

"Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100.00 a day." 29 U.S.C. § 1132(c)(1)(B).

don't receive all information requested within five days, I intend to take legal action to obtain such information and whatever benefits I may be entitled." On June 9, 1986, Michael Reese responded by sending to Ms. Winchester a copy of a pension plan summary description. On June 25, 1986, Ms. Winchester made her fourth request for information, stating "I have received your response to my request for information. I must inform you that literature sent to me was only a summary and not the information requested." Ms. Winchester reiterated that, "I wish to review this information with my attorney so that I may receive all benefits to which I may be entitled." In a letter dated June 7, 1986 (it appears that the letter was erroneously dated June 7, 1986, and should have been dated July 7, 1986), and in response to Ms. Winchester's request of June 25, 1986, Michael Reese indicated that, "[t]he summary plan description (SPD) which you received is the only document that is available to employees. Included in the SPD are the policies and procedures governing the pension plan and vesting information that you requested." On July 18, 1986, Ms. Winchester accepted her pension funds from Michael Reese Health Plan.

It was not until more than two years later, on September 1, 1988, that Ms. Winchester submitted her fifth and last request for "a copy of the health plan's pension policy and vesting information and any other information I may need to familiarize myself with the plan." On September 22, 1988, Michael Reese indicated that the information requested had previously been submitted to Ms. Winchester and, in addition, Winchester had already received all pension funds due to her on July 18, 1986. Nearly six months later, on April 24, 1989, Winchester filed a complaint seeking damages of $100.00 per day for each day from May 22, 1986, to the date defendant "provides to plaintiff all requested information under the Act." 29 U.S.C. § 1132(c)(1)(B). On May 2, 1989, Michael Reese sent a copy of the plan to Ms. Winchester.

Michael Reese filed a motion for summary judgment claiming that Winchester had no standing to file a suit and raising the defense of laches. The district court granted summary judgment to Michael Reese on the basis that plaintiff lacked standing to sue. 765 F.Supp. 424. The district court declined to make any findings on the defense of laches.

I.

"Congress' purpose in enacting the ERISA disclosure provisions was to ensure that 'the individual participant knows exactly where he stands with respect to the plan.'" *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 118, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989) (quoting H.R.Rep. No. 93–533, p. 11 (1973), *reprinted in* 1978 U.S. C.C.A.N. 4649). One of the goals of the ERISA scheme is to provide for prompt and fair settlement. *Pilot Life Ins. Co. v. DeDeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987). Prompt and fair settlement benefits both employees and employers. The issue we address today is whether a former employee can bring an action for damages under § 1132(c) more than two and one half years after that employee accepted a lump sum payment of benefits the amount of which is not and never was in dispute.

ERISA enables a participant in a plan governed by ERISA to bring a civil action for the failure or refusal of a plan administrator to disclose to the participant certain information requested by the participant in writing. 29 U.S.C. § 1132(a). Under ERISA, "[t]he term 'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees such an employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). The Supreme Court has found that "participant" in the context of ERISA means either "employees in, or reasonably expected to be in, currently covered employment," or "former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to

vested benefits." *Firestone*, 489 U.S. at 117, 109 S.Ct. at 957–58 (citations omitted).

Prior to accepting a lump sum benefits payment in July of 1986, Ms. Winchester was a participant in the plan and had standing to bring this civil action for the alleged refusal of the Administrator to comply with the disclosure provisions of ERISA. To determine whether Kaluzna Winchester had standing to bring this suit for damages nearly three years after she accepted payment of her benefits, we must decide whether in March, 1989 she had either a reasonable expectation of returning to covered employment or a colorable claim to vested benefits.

■ Plaintiff does not argue that she had a colorable claim to vested benefits in March, 1989. Rather, she argues that she has standing because she had a colorable claim to benefits when Michael Reese failed or refused to respond to the first four requests for information that Ms. Winchester made before she accepted the lump sum payment. Ms. Winchester claims that standing for an action under § 1132(c) cannot be extinguished by the acceptance of benefits. We disagree with her interpretation of the statute. The language of the statute limits the bringing of a civil action to a "participant." *See* 29 U.S.C. § 1132(c). We will apply the Supreme Court definition of "participant" to this case to determine if Ms. Winchester has standing.

■ Ms. Winchester argues that she had a reasonable expectation of returning to covered employment in March, 1989 because she had filed a discrimination suit and requested reinstatement. It is our understanding from oral argument that plaintiff was dismissed for cause. We refuse to hold that by filing a discrimination suit, under those circumstances, plaintiff may harbor a "reasonable expectation of returning to covered employment." Ms. Winchester is not seeking a benefit from an employee benefit plan. She is seeking damages under a penalty provision which Congress included in the ERISA scheme for the purpose of compelling administrators to provide information upon request. Ms. Winchester argues that "the sole purpose of [§ 1132(c)] ... is to provide a means to penalize an administrator for its failure to provide information to participants within thirty days." But the purpose of § 1132(c) is not so much to penalize as to induce plan administrators to respond in a timely manner to a participant's request for information. If the administrator does not respond, the participant may file a civil action; the administrator, to minimize potential liability, supplies the information. The manner in which Ms. Winchester chooses to employ this clause does not promote the goal of ERISA to reach fair settlements promptly.

Ms. Winchester had sufficient time to file this action before accepting her benefits. The letter of May 19, 1986, from Michael Reese to Ms. Winchester indicated that pension funds were available to be picked up at that time. In her response of June 5, 1986, Ms. Winchester said "if I don't receive all information requested within five days, I intend to take legal action to obtain such information." Ms. Winchester waited until July 18, 1986, to pick up the funds; and she waited until March, 1989 to "take legal action to obtain such information." Plaintiff accepted her benefits before filing this civil action to induce production of the plan, and then waited over two years to finally bring this civil action. This course of conduct brings her motivation into question.

There may be some merit to the argument that a former employee who had already received vested benefits should be allowed to bring an action within a reasonable amount of time against the administrator for failure to provide information, and in order to ascertain the accuracy of the amount already received. However, we do not believe that this case provides the proper factual scenario for that argument. If Ms. Winchester needed information to check the accuracy of the lump sum payment received in 1986, she should have acted to bring this action long before March, 1989 and probably even before July, 1986 since she had time to do so. We do not believe that we would promote the intentions of Congress in enacting ERISA if

we permitted Ms. Winchester to bring the action at this late date. She was not a plan participant at the time the action was filed and thus has no standing.

## II.

■ Although we decide this case by finding that Ms. Winchester has no standing, we believe that a brief discussion of the laches defense raised by Michael Reese is warranted. A finding of laches requires a showing of both inexcusable delay and prejudice resulting therefrom. *Dickinson v. Indiana St. Election Bd.*, 933 F.2d 497, 502 (7th Cir.1991). Ms. Winchester provided no explanation as to why she waited two years to submit the fifth request for information, and why she waited until April 24, 1989 (three years after she submitted her first request for information), to file this complaint. After not hearing from Ms. Winchester, Michael Reese assumed that the matter was closed. It was particularly appropriate for Michael Reese to assume this in light of the context of Ms. Winchester's letters which inferred that she sought information in order to confirm the amount of benefits due to her. We find that it was unreasonable for Ms. Winchester to accept payment of her benefits and then, after an unexplained two-year silence, seek information about the plan presumably to confirm the accuracy of the benefits received. There is no basis in the record of the case which would excuse the unreasonable delay.

If the delay is both unreasonable and inexcusable, then the defendant must show prejudice. *Cannon v. University of Health Sciences/Chicago Medical School*, 710 F.2d 351, 359 (7th Cir.1983). Prejudice in laches arises from the loss of evidence which diminishes the defendant's chance of success at trial. *Herman v. Chicago*, 870 F.2d 400, 403 (7th Cir.1989) (citing *Zelazny v. Lyng*, 853 F.2d 540, 543 (7th Cir.1988)). Michael Reese claims they would suffer from prejudice because one of the individuals who responded to plaintiff's request for information in 1986 is no longer with Michael Reese and it would be difficult to reconstruct records of events which took place three and one half years before Ms. Winchester filed her complaint. Certainly after not hearing from plaintiff for two years, Michael Reese could reasonably rely on the assumption that Ms. Winchester had received the information necessary to her calculations to determine "exactly where she stood" with the plan. There was no requirement, given the two year lapse of time, that Michael Reese should have preserved any evidence relating to the alleged dispute. "It would place a terrible burden on a company to preserve evidence for claims that may never be raised." *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 382 (7th Cir.1987). We do not believe that it would be equitable to permit Ms. Winchester to go forward with her action for penalty damages where her unexplained and unreasonable delay in filing the action makes it more difficult for Michael Reese to defend themselves at this late date.

## III.

We find that under the language of the statute, and the Supreme Court's interpretation of such language, Ms. Winchester was not a participant in the plan at the time she filed her complaint; therefore Ms. Winchester does not have standing to bring this action. We also find that Ms. Winchester's delay of more than three years in bringing this action, while it may not necessarily reach the level of laches, provides additional support for not expanding the definition of "participant" to include an individual in Ms. Winchester's situation. We therefore AFFIRM the decision of the district court.