**Roy A. JACKSON and Carlos E. Serment, Plaintiffs,**

v.

**E.J. BRACH CORPORATION, a Delaware corporation, Defendant.**

**No. 94 C 6350.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 15, 1996.

Gary David Ashman, David Mark Bagdade, Carey M. Stein, Ashman & Stein, Chicago, IL, for Heliodoro Haro, Roy A. Jackson, Patrick Speed, Carlos E. Serment.

Michael Lawrence Mulhern, Derek Grady Barella, Winston & Strawn, Chicago, IL, Robert Leslie Byman, Kenneth Roy Dolin, Jason Lloyd Peltz, Jenner & Block, Chicago, IL, for E.J. Brach Corp.

### *MEMORANDUM AND ORDER*

MORAN, Senior District Judge.

Plaintiffs Roy Jackson and Carlos Serment brought this action against E.J. Brach Corporation (Brach), their former employer. Brach denied plaintiffs severance benefits after they refused to sign a general release waiving all potential claims against Brach, including claims of discrimination based on age, race, or national origin. In count II of the second amended complaint, plaintiffs allege that defendant refused or failed to provide them with information which they requested in writing regarding the severance plan. They claim that this refusal or failure gives rise to penalties under section 502 of the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. 1132(c)(1). The parties have filed cross motions for summary judgment on count II. We grant plaintiffs' motion and deny defendant's.

### *FACTS*

In July, 1994, Brach terminated Serment and Jackson, employees who had worked for the company since 1965 and 1967 respectively. Upon terminating them, the company offered plaintiffs severance benefits on. the condition that they sign a release form. Neither plaintiff signed the release nor received any benefits under the plan, and Brach has since withdrawn its offer.

Count II of the complaint is premised on defendant's alleged delay and ultimate failure in providing plaintiffs with certain documents which they had requested in order to determine their rights under defendant's severance plan. It is undisputed that shortly after terminating plaintiffs in July, 1994, defendant, upon receiving a written request from plaintiffs' counsel for copies of Brach's employment policies relating, *inter alia,* to severance benefits, forwarded to plaintiffs a copy of the then-current version of its severance policy. On August 23, 1994, however, plaintiffs' counsel submitted a second written request to Henry M. Wells (Wells), Brach's senior vice president of human resources, for copies of a number of additional documents related to Brach's severance policy, including past versions of the policy and "... all filings made by Brach and all communications to Brach's employees required under ... ERISA" (def. exh. 3). On August 26, Wells responded, noting that plaintiffs had already been provided with "copies of the relevant

policies" (pl. exh. 2). He declined to provide plaintiffs with any additional documents (id.).

When Brach announced on October 18, 1994, that it would withdraw its offer of severance benefits to plaintiffs in less than a week, plaintiffs filed with this court a motion for a temporary restraining order, or in the alternative, a preliminary injunction, to compel defendant to produce the requested information. At the hearing on this motion, we declined to rule, but ordered defendant to produce at least those public documents which it had filed with the Department of Labor (see Report of Proceedings, 10/21/94, p. 22). It is undisputed that after the hearing defendant in fact did forward certain documents to plaintiffs, including a 1993 version of the severance plan and two IRS Form 5500s (annual reports) which had been filed for the years 1992 and 1993. After receiving this material, however, plaintiffs continued to assert that the document production was insufficient, and again moved for a preliminary injunction. We denied that motion.

Finally, on November 4, 1994, plaintiffs filed an amended complaint adding count II, a claim premised on defendant's alleged violations of § 502(c) of ERISA.[1] Count II of plaintiffs' second amended complaint realleges the same claim. We denied defendant's motion to dismiss this count in our May 1995 memorandum and order, ruling that plaintiffs had stated a claim under § 502. Prior to filing its motion to dismiss, defendant sent plaintiffs several additional out-dated versions of the policy. Defendant asserts that plaintiffs now possess all of the documents in Brach's possession that relate to the company's severance policy (def. memo, p. 6; Orozco dep., pp. 2, 3). Both parties now move for summary judgment on count II.

## DISCUSSION

■ A motion for summary judgment may be granted when there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law. Fed.Rule Civ.Pro. 56(c); Renovitch v. Kaufman, 905 F.2d 1040, 1044 (7th Cir.1990). The movant

must point to those portions of the record which demonstrate the absence of any genuine issue of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), and the reviewing court must draw all reasonable inferences in favor of the non-movant. See e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Bank Leumi Le–Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991). When it is clear that the plaintiff cannot carry her burden of persuasion at trial on one or more elements, summary judgment is appropriate for the defendant. See generally Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Conversely, summary judgment for the plaintiff is warranted when it is clear that a reasonable jury could only find that the plaintiff has met her burden as to all the elements of her claim. See generally id.

Under section 104(b)(4) of Title I of ERISA, the administrator of a welfare benefit plan, such as a severance plan, is required upon written request to furnish to any participant or beneficiary "a copy of the latest summary plan description [SPD], plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Section 502(c) of ERISA vests a reviewing court with the discretion to impose a penalty of up to $100 a day on a plan administrator—payable to the participant or beneficiary who submitted a written request to the administrator—when it finds that the administrator "fail[ed] or refuse[d] to comply with a request for any information which such administrator [was] required by this subchapter to furnish ... (unless such failure or refusal result[ed] from matters reasonably beyond the control of the administrator)...." Id. at § 1132(c).

A violation of section 104(b)(4)'s production requirements gives rise to a reviewing court's discretion to impose section 502(c) penalties. See, e.g., Firestone Tire & Rubber

---

1. In a May 24, 1995 memorandum and order, we dismissed counts I and III of the complaint, which were premised on alleged ERISA procedural violations and breach of contract respectively. Jackson v. E.J. Brach, Corp., 1995 WL 319760 (N.D.Ill.1995).

*Co. v. Bruch,* 489 U.S. 101, 115–18, 109 S.Ct. 948, 956–58, 103 L.Ed.2d 80 (1989); *Jones v. UOP,* 16 F.3d 141, 144 (7th Cir.1994) (violations of § 1024(b)(4) requirements are punishable under § 1132(c)); *Kascewicz v. Citibank, N.A.,* 837 F.Supp. 1312, 1320 (S.D.N.Y. 1993) (awarding § 1132(b) penalty to plaintiff for plan administrator's failure to distribute SPDs as mandated by § 104(b)). The issue presented in this case is whether a penalty is appropriate where an administrator fails to provide a participant with a document mandated by ERISA because the document no longer exists or was never created.

As stated *supra,* defendant claims that it has provided plaintiff with every document in its possession related to its severance policy. Plaintiffs contend that even if this is true defendant would be in violation of section 502(c), since its "failure" to provide mandated information upon request is a *de facto* violation. Specifically, plaintiffs contend that defendant has failed to provide *any* SPDs, since the documents which it *has* produced disclose insufficient information to constitute SPDs under the requirements of 29 U.S.C. § 1022(b). They also argue that at least one of the annual reports defendant provided was an insufficient annual summary, that defendant failed to produce an annual report for 1991, and that defendant has produced no versions of modifications or amendments, even though it admits to amending the plan at least once (to add the release requirement).

#### A. Out–dated documents

We begin with plaintiffs' requests for out-dated documents, such as old SPDs, annual reports and modifications. We are not convinced that section 502(c) requires a plan administrator to provide such documents. Administrators are instructed, upon written request, to furnish "a copy of the *latest* [SPD] ... and the *latest* annual report." *Id.* at 1024(b)(4) (emphasis added). They are also required to provide any "instrument un-

der which the plan is established or operated." *Id.* Outdated reports, summaries and modifications, whether or not they were ever created, do not fall into either category. It is true, of course, that the administrator's failure to produce these documents may have been *at one time* an ERISA violation that *could have* given rise to § 502(c) liability if a participant had requested them promptly (i.e. when they were the "latest" version of the plan).[2] But we can discern no statutory basis for penalizing an administrator for failing to provide documents which have no current application whatsoever.[3]

Furthermore, defendant asserts that its failure to give plaintiffs the aforementioned documents is a result of these documents not existing. Plaintiffs provide no basis for calling into question the credibility of this assertion. It has been stated that the purpose of section 502(c) is to "induce compliance with requests for information." *Winchester v. Pension Committee of Michael Reese Health Plan, Inc.,* 942 F.2d 1190, 1193 (7th Cir.1991). We cannot fathom how that purpose would be furthered by requiring a plan administrator to create from scratch a document containing details which have since been amended. Indeed, compelling the production of such a backdated document would probably create more confusion than it would resolve. Finally, section 502(c) creates an exception for "failure[s] or refusal[s] resulting] from matters reasonably beyond the control of the administrator." 29 U.S.C. § 1132(c)(1). We think that the nonexistence of an out-dated document, or in some instances the misplacing of such a document, falls into this category, especially when there is no evidence of bad faith on the part of the plan administrator.

#### B. Documents with current applicability

##### 1. Section 502(c) liability

The same cannot be said, however, for documents which represent (or are sup-

---

2. We express no opinion as to whether the Secretary, under the terms of sections 1024(a) and 1132(a), can impose a penalty for outdated violations of its procedural requirements.

3. The Ninth Circuit has stated that in some cases there may be a duty to disclose more than ERISA requires. *Acosta v. Pacific Enterprises,* 950 F.2d 611, 618–19 (9th Cir.1991). We are not faced with such a case here.

posed to represent) the latest information about the plan. Plaintiffs argue that defendant was required under ERISA to produce upon written request the latest SPD, the latest annual report and a copy of the plan description, *whether or not these documents existed at the time of the request.* Section 502(c)'s penalty provision is triggered by both refusals to provide requested information, and *failures* to do so. 29 U.S.C. § 1132(c). Plaintiffs note that the statute makes no exception or qualification for failures caused by the *absence* of mandated documents.

 We adopt plaintiffs' logic. *See Kascewicz v. Citibank, N.A.*, 837 F.Supp. at 1321 (intimating without holding that an administrator's failure to respond to a request because it had never prepared the requested document is actionable under § 502(c)). Under section 104(b)(4), participants and beneficiaries of an ERISA plan are entitled upon written request to a copy of the plan, the latest SPD, and the latest annual report. 29 U.S.C. § 1024(b)(4). If any of these documents do not exist at the time of a request, it is consistent with the aims of ERISA to impose a penalty on the plan administrator for every day that he fails to provide the document to the participant who requested it. There is nothing keeping the administrator from preparing a mandatory document where none previously existed, and it is his burden upon threat of penalty to do so. If the rule were as defendant interprets it, it would be too easy for a plan administrator to avoid section 502(c) penalties simply by failing to maintain documents or by destroying them when a participant makes a written request.

 Defendant counters by arguing that the documents which it *did* produce are sufficient to meet the requirements of ERISA. We cannot agree. Plaintiffs were terminated in July, 1994. Thus, for the purposes of our review the then-current SPD, plan description and 1993 annual report are the critical

documents. Defendant provided plaintiffs with two documents purporting to fulfill ERISA's requirements: a two-page description of the severance plan as it existed in July, 1994 (the last revision had been made on January 25, 1994), and the annual report which it filed with the IRS in 1993.

The first of these documents is not entitled "plan description" or "summary plan description." It does not contain: (1) the designation of an agent for service of process; (ii) the source of the plan's financing; (iii) the date of the end of the plan year and the basis for recordkeeping; (iv) a claims procedure and available remedies for redress of denied claims; or (v) a statement of ERISA rights. Under ERISA, each of these pieces of information must be included in a plan description or an SPD. 29 U.S.C. § 1022(b); 29 C.F.R. § 2520.102–3. Furthermore, although it reveals that the execution of a general release is a condition for eligibility, the document does not state whether or not there are other eligibility conditions.

We find that the document which defendant produced was not an SPD or a plan description as defined by statute and regulation, since it does not contain "all or substantially all categories of information required under [section 102(b) of ERISA] and [DOL regulations]." *Hicks v. Fleming Cos., Inc.*, 961 F.2d 537, 543 (5th Cir.1992).[4] When a plan participant or beneficiary requests a plan description or an SPD, an administrator is "not authorized under ERISA to respond to this request with documents that it believed were equivalent or that it thought would provide the plaintiffs with comparable information." *Cohen v. Gross, Sklar & Metzger, P.C.*, 1992 WL 38387, *6 (E.D.Pa.1992). *See also McFaul v. Loews Corp.*, 1993 WL 541778, *4 (S.D.N.Y.1993). Furthermore, one document cannot constitute both the plan description and the SPD. Since defendant has produced just one two-page document to

---

4. We are not persuaded, however, that the second document produced by defendant to fulfill the ERISA requirements, the 1993 annual report, is deficient. *See* 29 U.S.C. § 1023. While it is perhaps true that certain items in the report are incorrect (i.e. it claimed that the severance plan

had never been amended or modified), as a whole the form is in substantial compliance with the ERISA requirements (def. exh. 6). Furthermore, any error on the form appears to have been inadvertent, and there was no harm to plaintiffs.

satisfy both requirements, it is certainly in violation of ERISA.

Finally, there can be no 502(c) liability without a written request by the plaintiff for information which the administrator was required to produce. There is little doubt that plaintiffs' August 23, 1994 letter to Wells satisfies this requirement. As we noted in our May memorandum and opinion, although the letter is slightly overbroad, it contains a request for the production of "all filings made by Brach required under ... ERISA, relating to this particular employee welfare plan" (compl., exh. 6). Defendant cannot seriously argue that this letter did not include a request for the then-current SPD and plan description.

## 2. Penalty

Having found that plaintiffs have established a section 502(c) violation, we turn now to the decision of whether to impose a penalty. *See Kleinhans v. Lisle Savings Profit Sharing Trust,* 810 F.2d 618, 622 (7th Cir. 1987) (court's discretion to impose statutory penalty only arises when "the facts of the case establish an actual violation of [§ 502(c) ]").[5] As stated *supra,* the purpose of section 502(c) is "not so much to penalize as to induce plan administrators to respond in a timely manner to a participant's request for information." *Winchester v. Pension Committee of Michael Reese Health Plan, Inc.,* 942 F.2d at 1193. Given this purpose, it is improper to place "a primary focus on the impact to the participant rather than the administrator's conduct." *Id.*

█ Courts have looked to a number of factors in determining whether to assess a section 502(c) penalty, such as "bad faith or intentional conduct on the part of the administrator, the length of the delay, the number

of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary." *Pagovich v. Moskowitz,* 865 F.Supp. 130, 137 (S.D.N.Y. 1994). *See also Ziaee v. Vest,* 916 F.2d 1204, 1210 (7th Cir.1990) ("the judge may, but need not, consider the provable injury when exercising the discretion"), *cert. denied,* 499 U.S. 959, 111 S.Ct. 1581, 113 L.Ed.2d 646 (1991); *Kleinhans,* 810 F.2d at 622 (conduct and intent of the administrator in not providing the required information considered).

█ In our May memorandum and order we determined that plaintiffs were not prejudiced by defendant's procedural violations, since they had received adequate notice of their rights under the plan.

Plaintiffs admit that at the time of their terminations or shortly thereafter, Brach sent them a statement detailing the amount they would receive under the plan and explaining that they would be paid only if they waived all their claims against Brach. The company gave them three months to make their decision whether to accept. These facts clearly show that Brach did not conceal the plan, act in bad faith, or induce plaintiffs' reliance on a faulty plan summary *after* they were terminated.

*Jackson v. E.J. Brach, Corp.,* 1995 WL 319760, at *3. Thus, while the two-page document which defendant provided plaintiffs contained insufficient information to constitute an SPD or a plan description, *see supra,* it was at least sufficiently comprehensive to provide plaintiffs with all the information they needed to determine their rights under the plan.

Our inquiry cannot end here, however. *See Ziaee,* 916 F.2d at 1210 (it is improper to use the absence of prejudice as a dispositive

---

**5.** Defendant argues that imposing a 502(c) penalty creates an inconsistent result, since it permits a plaintiff to benefit from a court-imposed penalty even in cases in which a reviewing court has ruled that the plaintiff is not entitled to recover lost benefits as a result of the same alleged procedural violations. We disagree. The damages available to plaintiffs for the substantive harm caused by procedural violations, available only in "exceptional circumstances," *Kreutzer v. A.O. Smith Corp.,* 951 F.2d 739 (7th Cir.1991), are wholly distinct from section 502(c) penalties.

The former, if awarded, yield the actual benefits denied a plan participant. The latter is a penalty intended to compel compliance on the part of plan administrators. It is not inconsistent or problematic to deny one and grant the other, even if both are grounded to some extent in the same alleged procedural deficiency. *See Kleinhans,* 810 F.2d at 622 (section 502(c), unlike section 502(a), provides a participant with the means of recovering for an administrator's delay in providing information).

factor in determining whether to assess a penalty).[6] Courts faced with the decision of how large a penalty, if any, to assess in a situation where the plaintiff has established little or no prejudice due to defendant's ERISA violations have come to a wide variety of solutions. *See Pagovich*, 865 F.Supp. at 138 (imposing a $75 per diem penalty on defendant whose conduct was found to be indifferent and whose delay in producing important documents was extensive); *Piggot v. Livingston Co., Inc.*, 1989 WL 111845, *3 (N.D.Ill.1989) ($2 per day "nominal penalty" imposed where delay was not in bad faith and documents appeared not to be related to plaintiff's claim for benefits); *Mitchell v. American Hardware Manufacturers Assoc.*, 1985 WL 2559, *11 (N.D.Ill.1985) ("nominal" $1000 total award granted to plaintiff where "there [was] no evidence that defendants acted intentionally, recklessly, or maliciously"); *Geary v. Chicago Tile Institute Welfare Trust*, 1995 WL 228971, *6 (N.D.Ill.1995) (no penalty assessed); *Nunez v. Monterey Peninsula Engineering*, 867 F.Supp. 895, 910 (N.D.Cal.1994) (same). *See also Kascewicz*, 837 F.Supp. at 1324 (noting, in a case where prejudice *was* found, that "the size of the per diem penalties [in past cases] has ranged from $10 a day to $50 a day, and the aggregate penalties have ranged from $1,500 to over $15,000").

In this case, there is no dispute that defendant provided plaintiffs with the two-page summary of the severance plan promptly upon receiving plaintiffs' counsel's first written request. We take this evidence of defendant's good faith into consideration. Nevertheless, despite further requests from plaintiffs, both written and in open court, defendant has failed to produce a formal and complete SPD or plan description as required under ERISA. Since count II of the complaint specifically refers defendant to the applicable sections of the ERISA statute, we cannot excuse defendant's actions based on ignorance of the law. Defendant has had over two years to educate itself about what is required, and to bring itself into compliance.

We are of the opinion that this case requires some penalty, although one closer to a nominal amount, since plaintiffs were not denied the information they needed and defendant made a prompt attempt at fulfilling its duties under the statute. We believe that $10 per diem is appropriate, since that amount should more than cover the expense of pursuing this claim. Calculation of the penalty shall run from the first day Brach was in default of his disclosure obligations, September 22, 1994 (the thirty-first day after the first written request was made), through and including the day this opinion is issued to the parties, a total of 692 days. Penalties are therefore awarded against Brach in the total amount of $6,920.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment on count II is denied, and plaintiffs' motion for summary judgment is granted. A penalty in the amount of $6,920 is assessed against defendant.

---

**6.** Nor are we convinced that there is a complete absence of "prejudice" here in a broader sense. At the very least, plaintiffs have expended much time and effort in trying to get defendant to produce the documents at issue. *See Pagovich*, 865 F.Supp. at 138 (harm in the form of "distress and frustration" about defendant's unex-

plained delay considered). While it is true that ERISA does not entitle plaintiffs to many of these documents, plaintiffs' efforts had some merit, and it is apparent that they at least felt that the desired documents would be helpful in understanding their rights.