File Name: 07a0868n.06

Filed: December 19, 2007

<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>

No. 06-6601

UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT


JASON JORDAN,

      Plaintiff-Appellant,

v.

TYSON FOODS, INC., TYSON FOODS INC. GROUP HEALTH PLAN, IBP, INC., IBP WELFARE BENEFITS PLAN,

      Defendants-Appellees.

                                      /

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE


BEFORE:    CLAY and GIBBONS, Circuit Judges; HOOD, District Judge.[*]

    **CLAY, Circuit Judge.**  Plaintiff Jason Jordan, a former employee of Defendant Tyson Foods, appeals the final judgment entered by the district court rejecting Plaintiff's claims for statutory and equitable relief due to Defendants' alleged failure to provide notice of Plaintiff's

---

    [*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

statutory right to health care continuation coverage in violation of 29 U.S.C. § 1132. For the following reasons, we **AFFIRM** the district court's judgment.

## BACKGROUND

Plaintiff began employment as a general laborer with Defendant IBP, inc.[1] on April 23, 2001. As a result of his employment, Plaintiff was able to enroll in two employee benefit plans offered by IBP, the IBP Welfare Benefits Plan ("the IBP Plan") and the Short Term Disability Plan ("the STD Plan"), which were in effect until September 30, 2002. The required fees for membership in these plans were automatically deducted from Plaintiff's paycheck.

On June 6, 2002, Jordan applied for and was granted a medical leave of absence for emotional problems. According to the IBP Plan, the following provision governed plan benefits for employees who are on a leave of absence:

> **Leave of Absence**
> Subject to the FMLA leave provisions discussed below, you may continue coverage (including independent coverage) for up to 12 continuous months while on an approved medical leave, and for one month in the case of personal leave. Applicable contributions must continue to be made to the Plan in order to retain coverage during your leave of absence. If you do not return to work at the end of the approved leave period, then your coverage will terminate, unless continued in accordance with the COBRA continuation provisions.

(J.A. 152.) The FMLA provisions referenced above state, in pertinent part:

> If you choose to continue coverage while on an approved leave made available under the Family and Medical Leave Act ("FMLA"), you may do so by paying any required contributions that would have been paid if you had been working. If you fail to pay any required contribution, coverage will terminate on the last day of the period for which contributions were paid.

---

[1] In IBP's name the "i" in "inc." is not capitalized.

2

(J.A. 152.) Because Plaintiff was not receiving monthly paychecks during his leave of absence, his fees were not being automatically deducted from his paychecks every month. Plaintiff did receive short-term disability checks during this leave, but fees were not taken from these checks to pay Plaintiff's premiums. Typically, IBP sent a packet to an employee on a leave of absence as a reminder that fees are still due in order to stay enrolled in the benefits programs. This packet contained, among other information, "coupons" that allowed an employee to continue coverage for up to twelve months while on a leave of absence by paying monthly fees. Plaintiff's packet, however, was sent to a previous address instead of Plaintiff's current address. Plaintiff did not pay his premiums while he was on medical leave. However, the IBP Plan continued to pay his medical claims through September 30, 2002, when Defendant Tyson Foods, Inc. ("Tyson") acquired IBP. Thereafter, Tyson replaced the IBP Plan with the Tyson Foods, Inc. Group Health Plan ("the Tyson Plan").

Tyson only allowed employees whose payments were up-to-date in the IBP Plan to enroll in the Tyson Plan. This policy was not expressly stated in the Tyson Plan's written Group Health Plan Description. On October 4, 2002, Plaintiff completed the enrollment form and was allowed to enroll in the new Tyson Plan. Plaintiff also provided his new address on this form. In November of 2002, Tyson deducted the premiums for the plan from one of Plaintiff's short-term disability checks. On November 26, 2002, Tyson realized that Plaintiff's premium payments were in arrears with respect to the IBP Plan and, thus, that his application for the Tyson Plan never should have been accepted. He was therefore "disenrolled" from the Tyson Plan retroactive to October 1, 2002.

On December 10, 2002, Plaintiff's attorney and his mother both contacted Tyson on Plaintiff's behalf to attempt to have his benefits restored. On the same day, Plaintiff's attorney,

Charles Yezbak, sent two letters on Plaintiff's behalf to Travis Fredrickson and Paul Kirchner at

IBP. The letters requested that Plaintiff's benefits be reinstated immediately. On January 7, 2003,

Yezbak wrote another letter to Kirchner stating that his previous communications had been ignored

and demanding again that Plaintiff's coverage be reinstated. Kirchner responded that day and

explained as follows:

> [Plaintiff] received a short-term disability check in November, and the following deductions were taken in error as part of that check: $15.00 (1 week) for the 10-02 Plan and $27.81 (3 weeks at $9.27week) under the old Plan. The latter deduction was applied to three-fourths of the July premium, the most recent arrearage. Consequently, a portion of July's premium was left unpaid along with all of the premiums for August and September. This leaves your client with no medical coverage for part of July, and all of August and September, under the Group Medical Plan for IBP, unless he pays the arrearage of $80.37 in full.
>
> As of October 1, 2002, the company completed its merger of the Group Medical Plan Coverage for the entire company. That Plan provides that team members on a leave of absence with your client's seniority are allowed to make continuation payments for three months ($180), and if these payments are made, then the team member will receive a COBRA notice at the end of the three month period. Since [Plaintiff] is in arrears for a substantial portion of October and all of November and December, he should pay for that time period as well so that he has no break in coverage. The total payment needed to maintain his coverage without interruption would be $260.37. Otherwise, upon return to work, [Plaintiff] will be able to participate in the Medical Benefit Plan upon payment of his premiums with a break in coverage for any period of unpaid premiums.

(J.A. 20-21.). Kirchner wrote another letter on January 15, 2003 reminding Yezbak to advise him

of what Plaintiff planned to do about his benefits. On January 31, 2003, Plaintiff was terminated

when he failed to return to work after his medical leave expired. On February 21, 2003, Yezbak

contacted Kirchner formally requesting a number of documents pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S. § 1001 *et seq.* (2000), and appealing

Tyson's denial of Plaintiff's benefits. In a letter from Yezbak dated March 21, 2003, Plaintiff made

a Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161, *et seq.* (2000), election to continue his benefits. Plaintiff never attempted to make premium payments pursuant to this COBRA election.

On April 15, 2003, Tyson responded to Plaintiff's appeal. Tyson stated that Plaintiff did not give timely notification of his change of address and that he did not make a timely election of COBRA coverage. Tyson offered to reimburse Plaintiff for the money that was deducted from Plaintiff's short-term disability checks to pay for premiums for the Tyson Plan. On June 3, 2003, after hiring new counsel, Plaintiff appealed the April 15, 2003 response. He sent a follow-up letter to Tyson on August 15, 2003, stating that if the matter was not settled by September 15, 2003, he would file suit under ERISA.

After several settlement offers were made by Tyson and rejected by Plaintiff, Tyson sent a final administrative determination to Plaintiff on April 28, 2005. In the letter, Tyson conceded that there was some uncertainty about Plaintiff's last known address at the time the COBRA election notice was sent.[2] Due to this uncertainty, Tyson offered Plaintiff the opportunity to elect COBRA continuation coverage for the maximum COBRA continuation period beginning on October 1, 2002 since Plaintiff was covered under the IBP Plan before that date. Plaintiff was required to elect COBRA continuation coverage within sixty days and to pay the applicable premiums within forty-five days of election. The total cost of premiums for the entire coverage period was $3,631.86. Plaintiff objected to the proposed start date of COBRA continuation coverage and asserted that

---

[2]Throughout the administrative process Defendants treated the letter and coupon book sent by IBP as a COBRA election notice. Only in district court did Defendants raise the argument that there was no "qualifying event" for which a COBRA election notice was required.

coverage should have started on January 31, 2003, the date of Plaintiff's termination. Tyson responded that the start date had not been contested earlier and that it was appropriate due to Plaintiff's reduction in hours. On June 25, 2005, Plaintiff filed a complaint in federal district court alleging violations of the COBRA notice provisions under 29 U.S.C. § 1132 *et seq.*

Plaintiff filed a motion for judgment on the administrative record on April 14, 2006, and his motion was heard by a magistrate judge who determined that the Plaintiff was not a participant under the Tyson Plan and that, as a result, Plaintiff did not have standing to bring a § 1132(a)(1)(B) claim. The magistrate judge further held that Plaintiff's claim under § 1109(a) for breach of fiduciary duty for improper withholdings from short term disability payments failed because Plaintiff was unable to state a cognizable claim under this provision. Finally, the magistrate judge determined that no "qualifying event" took place that triggered Defendants' duty to issue a COBRA-compliant notice of benefits to Plaintiff. Thus, the magistrate judge held that all of Plaintiff's claims failed. The district court thereafter approved the findings and recommendation of the magistrate judge and thereby denied Plaintiff's motion for judgment on the administrative record and granted Defendants' motion for judgment on the merits. Plaintiff timely filed a notice of appeal.

## DISCUSSION

### A.      Standard of Review

In an ERISA case, this Court reviews the district court's grant of judgment *de novo*. *Wilkins v. Baptist Healthcare Sys. Inc.,* 150 F.3d 609, 613 (6th Cir. 1998). Thus, we apply the same standard of review of a plan administrator's action as the district court applies. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 427 (6th Cir. 2006). We generally review a plan administrator's ERISA-related

decisions *de novo*. *Id*. However, when a plan expressly grants the plan administrator discretionary authority, we must apply the highly deferential arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998). "A plan administrator's decision will not be deemed arbitrary and capricious so long as 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Haus v. Bechtel Jacobs Co., LLC*, 491 F.3d 557, 561-62 (6th Cir. 2007) (quoting *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). Since the IBP Plan did not expressly reserve discretion for the plan administrator, IBP, decisions made regarding the IBP Plan must be reviewed *de novo*. The Tyson Plan reserves discretionary authority for the plan administrator, and as a result an abuse of discretion standard is appropriate with respect to evaluating decisions made regarding the application of the Tyson Plan.

**B.      Analysis**

Plaintiff claims that he is entitled to statutory and equitable relief under § 1132 of ERISA. Plaintiff seeks remand of his case to the district court for statutory and remedial relief pursuant to 29 U.S.C. § 1132(c)(1)(A) for Defendants' failure to provide COBRA-compliant notice; an order pursuant to 29 U.S.C. § 1132(a)(1)(B) instructing Defendants to provide Plaintiff the right to elect COBRA continuation coverage with a start date of January 31, 2003; and an order remanding Plaintiff's claims for unpaid medical benefits prior to January 31, 2003 to Defendants for consideration and payment. In order for this court to have jurisdiction over this suit, Plaintiff must have statutory standing to seek this relief.

**1. Statutory Standing**

ERISA was amended by the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. 99-272, 100 Stat. 82, 222-237 to require employers to give employees at risk of losing health coverage due to specific "qualifying events" the opportunity to elect "continuation coverage." Section 1132 of ERISA allows for civil actions to be brought for the enforcement of employee benefits rights. 29 U.S.C. § 1132 (2000). Only participants, beneficiaries, fiduciaries and the Secretary of Labor can bring an action under § 1132. Thus, in addition to the constitutional standing required in every case, a party must have statutory standing by belonging to one of these categories.

The Supreme Court has interpreted the statutory definition of "participant" contained in 29 U.S.C. § 1002(7) to include:

> employees in, or reasonably expected to be in, currently covered employment or former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits. In order to establish that he or she may become eligible for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.

*Firestone Tire*, 489 U.S. at 117-118 (internal citations omitted). This Court has further elaborated on the requirements for former employees to be deemed participants by cautioning that:

> [i]n determining who is a "participant," for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of standing, not in the context of adjudicating the ultimate issue of the merits of plaintiffs' claim that they are not receiving the full extent of the benefits to which they are entitled from the employee benefit plan which is paying them retirement benefits.

*Astor v. International Business Machs. Corp.*, 7 F.3d 533, 538 (6th Cir. 1993). Thus, the determination of participant status must focus "on a person's effort to get his complaint before a court and not on the issue he wishes to have adjudicated." *Id.*

Plaintiff claims to have standing as a participant in the Tyson Plan, but he does not claim to have a reasonable expectation of returning to covered employment or that eligibility requirements will be satisfied in the future. Thus, to have standing for purposes of an ERISA claim, Plaintiff must have a colorable claim for benefits. In order to satisfy this standard, one must have "a reasonable claim that (1) [one] will prevail in a suit for benefits or that (2) eligibility requirements will be fulfilled in the future." *Morrison v. Marsh & McLennan Companies, Inc.*, 439 F.3d 295, 304 (6th Cir. 2006). We have consistently held "that a person who terminates his right to belong to a plan" generally does not have a colorable claim to benefits. *Swinney v. General Motors Corp.*, 46 F.3d 512, 518 (6th Cir. 1995). However, "if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach." *Id.* This exception exists in order to prevent employers from "duping [employees] to give up [their] right[s] to participate in a plan." *Id.* In order to determine whether a plaintiff has a colorable claim for benefits we have analyzed whether a plaintiff's allegations, if taken as true, would establish a claim for benefits. *See e.g. Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411 (6th Cir. 1996) ("Shahid argues that if Ford had not improperly terminated her, or had not induced her to delay her 'acceptance' of the VTP, she may have become eligible to participate in the VTP. Thus, Shahid has standing to bring this action as a "participant" in an ERISA plan."); *Swinney*, 46 F.3d at 520 ("According to plaintiffs, but for these fiduciary breaches, they would have taken laid-off status and thus would have participated in the benefits plans available to laid-off workers. Therefore, they have standing as 'participants' to bring an action for these benefits.").

Plaintiff alleges that he would have been a covered employee in the Tyson Plan but for his wrongful termination from the plan. According to Plaintiff, Defendants' actions were the reason he was not covered by the Tyson Plan at the time of his termination. Plaintiff claims that IBP failed to give Plaintiff notice of his duty to pay health care premiums during his leave of absence. Plaintiff additionally claims that Tyson wrongfully terminated him from the Tyson Plan. Tyson contends in response that Plaintiff's non-payment of premiums was the cause of his loss of coverage. However, the statutory standing inquiry cannot end with Plaintiff's non-payment of premiums. If, as Plaintiff contends, his non-payment was caused by Defendant IBP's wrongful failure to notify him of the necessity of payment, Defendants would remain the "but for" cause of Plaintiff's loss of coverage.[3] Plaintiff's "claim is not so insubstantial that it fails to present a federal controversy." *Moore*, 458 F.3d at 445. Since Plaintiff has set forth a colorable claim for benefits, Plaintiff is a participant and thus has standing to bring this suit.

## 2. Merits

Plaintiff claims that he was entitled to COBRA-compliant notice when he was terminated on January 31, 2003. COBRA requires employers to allow employees to elect to purchase COBRA continuation health coverage when a "qualifying event" occurs threatening the employees' existing health coverage. "COBRA rights include the option to continue health insurance coverage equivalent to other qualified beneficiaries for at least eighteen months, at a cost of no more than 102 percent of the premium; the beneficiary must elect coverage within sixty days after the qualifying

---

[3]This conclusion is not undermined by Defendants' subsequent offer to reinstate his coverage, which was contingent upon Plaintiff's payment of a lump sum of $260.37. (J.A. 21.)

10

event, and may not be required to make the first premium payment before forty-five days after election." *McDowell v. Krawchison*, 125 F.3d 954, 958 (6th Cir. 1997).

According to 29 U.S.C. § 1163 a qualifying event is defined as follows:

**Qualifying event**
For purposes of this part [29 U.S.C. §§ 1161 et seq.], the term "qualifying event" means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part [29 U.S.C. §§ 1161 et seq.], would result in the loss of coverage of a qualified beneficiary:

(1)     The death of the covered employee.
(2)     The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.
(3)     The divorce or legal separation of the covered employee from the employee's spouse.
(4)     The covered employee becoming entitled to benefits under title XVIII of the Social Security Act [42 U.S.C. §§ 1395 et seq.].
(5)     A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.
(6)     A proceeding in a case under title 11, United States Code, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

Thus, an employee's termination for reasons other than gross misconduct would constitute a "qualifying event" if the termination would result in a loss of coverage absent COBRA continuation benefits. The parties agree that Plaintiff was not terminated for gross misconduct and that if Plaintiff was a covered employee at the time of his termination, the termination would result in Plaintiff's loss of coverage. The parties do, however, dispute whether Plaintiff was entitled to health care coverage when he was terminated.

Plaintiff argues that because he would have been a covered employee if Tyson had not wrongfully disenrolled him from the Tyson Plan, he was entitled to COBRA continuation coverage and to notice of this entitlement when he was terminated from employment. Tyson retroactively discontinued Plaintiff's coverage because Plaintiff's payments to the IBP Plan were in arrears. This

11

action was consistent with the written policies of both the IBP Plan and the Tyson Plan which stated that coverage will be discontinued for employees who fail to pay their premiums. Plaintiff claims the arrears were attributable to Defendants because IBP failed to send the coupon book outlining Plaintiff's payment duties to his correct address. However, Plaintiff had at least constructive notice of his duty to pay his health care premiums while on leave. An employee's duty to pay premiums was noted in the IBP Plan Summary Plan Description, and with one exception[4] these premiums were not taken out of Plaintiff's short-term disability check. *See Strotman v. E.I. DuPont de Nemours & Co.,* 1991 WL 100593, at *1 (6th Cir. June 11, 1991) (stating that a summary plan description gave an employee constructive notice of age restrictions on benefit eligibility); *Aguilera v. Landmark Hotel-Metairie*, 1992 U.S. Dist. LEXIS 19720, at *9 (E.D.La. 1992) ("Furthermore, Plaintiff cannot plead ignorance to the policies of her own health care program, since it was her responsibility to make sure she was following its requirements."). As a result, Plaintiff's non-payment cannot be attributed to Defendant IBP.

Plaintiff also claims that he was entitled to COBRA health care continuation coverage due to the provisions of the Family and Medical Leave Act of 1993 ("FMLA"), 107 Stat 6, (codified as amended at 29 U.S.C. § 2601 et seq. (2000)). The parties disagree as to whether Plaintiff's leave was governed by the FMLA. However, Defendants' argument that no part of Plaintiff's leave was FMLA-eligible is foreclosed by the district court's unappealed determination that IBP technically

---

[4]Deductions for health care premiums were deducted from Plaintiff's November 30, 2002 Short-Term Disability check. Defendants claim this occurred due to an oversight. Regardless of the reason, this withholding occurred months after Plaintiff's leave began and thus could not have fostered an expectation that Plaintiff's premiums were being paid from his disability checks.

violated the FMLA by not giving Plaintiff notice of his FMLA rights. (J.A. 555.) Plaintiff's leave began on June 6, 2002 and ended at the earliest on January 6, 2003.[5] Since the FMLA allows for a maximum of twelve weeks of leave during a twelve-month period, 29 U.S.C. §2612(a)(1)(D), any FMLA-eligible portion of Plaintiff's 2002 leave ended at or before August 29, 2002.[6]

The FMLA requires employers to maintain health care coverage for employees while they are on an FMLA leave of absence. 29 C.F.R. § 825.209(a). This maintenance of benefits provision does not require employers to continue providing coverage for employees who fail to pay their premiums during an FMLA leave. An employer may discontinue health care coverage for nonpayment after giving the employee notice of this action, but the employer must reinstate the employee in the group health care coverage plan upon the employee's return to active work. 29 C.F.R. § 825.212. However, "[e]xcept as required by [COBRA,] an employer's obligation to maintain health benefits during leave (and to restore the employee to the same or equivalent employment) under FMLA ceases if and when . . . the employee fails to return from leave or continues on leave after exhausting his or her FMLA leave entitlement in the 12-month period." 29 C.F.R. § 825.209(f).

Contrary to Plaintiff's assertions, the FMLA does not require Plaintiff's employer to give Plaintiff the opportunity to elect COBRA continuation coverage. Plaintiff quotes Treasury Department regulation 26 C.F.R. § 54.4980B-10, Q-3 in support of his position that the provisions

---

[5]Plaintiff's leave was extended repeatedly, and his last day of approved leave was January 5, 2003. However, Plaintiff did not return to work on January 6, 2003 and was terminated on January 31, 2003.

[6]It is unclear from the record whether leave Plaintiff took earlier in the year was FMLA-qualifying leave.

of the FMLA made his failure to pay premiums irrelevant in determining his employer's COBRA obligation. This regulation states:

> Q-3: If an employee fails to pay the employee portion of premiums for coverage under a group health plan during FMLA leave or declines coverage under a group health plan during FMLA leave, does this affect the determination of whether or when the employee has experienced a qualifying event?
>
> A-3: No. Any lapse of coverage under a group health plan during FMLA leave is irrelevant in determining whether a set of circumstances constitutes a qualifying event under Q&A-1 of this section or when such a qualifying event occurs under Q&A-2 of this section.

*Id.* However, Plaintiff fails to discuss what circumstances constitute a qualifying event under Q&A-1. Q&A-1 explains that taking FMLA leave does not generally constitute a qualifying event. An FMLA leave can result in a qualifying event if an employee who does not return from FMLA leave (1) was covered under her employer's health plan the day before taking FMLA leave, (2) does not return to employment at the end of the FMLA leave, and (3) would lose health coverage in the absence of COBRA continuation coverage. 26 C.F.R. § 54.4980B-10, Q-1. Plaintiff's argument fails because the third condition does not apply to him. Without COBRA continuation coverage Plaintiff would have remained covered under the IBP Plan (and subsequently the Tyson Plan) as long as he paid his premiums.

Even though an inevitable loss of coverage did not occur as a result of the end of the FMLA-eligible portion of his leave, Plaintiff argues that a COBRA qualifying event occurred upon his termination from employment. Plaintiff cites Treasury Department regulations stating that when a plan provides coverage beyond the expiration of FMLA leave, a qualifying event for COBRA purposes occurs on the date coverage is lost even if this date is later than the date FMLA leave expires. 26 C.F.R. § 54.4980B-10, Q-2. Plaintiff claims that a COBRA qualifying event occurred

14

on January 31, 2003, the date he would have lost coverage due to his termination but for Tyson's earlier denial of benefits. Since we have determined that Tyson's decision was not arbitrary or capricious, this argument is without merit. As a result of Plaintiff's failure to pay his premiums, Plaintiff lost his coverage before his termination. Because no qualifying event occurred, Tyson had no duty to provide COBRA continuation notice.

## CONCLUSION

Inasmuch as Plaintiff was not entitled to COBRA continuation notice and Tyson's denial of benefits was not arbitrary or capricious, we **AFFIRM** the judgment of the district court.