**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0822n.06

No. 11-6177

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

*Jul 31, 2012*

LEONARD GREEN, Clerk

CLARCOR, INC., )
)
    Plaintiff-Appellant, )
)
    v. )
)
MADISON NATIONAL LIFE INSURANCE )
COMPANY, INC., )
)
    Defendant-Appellee. )
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

BEFORE: SUTTON and GRIFFIN, Circuit Judges; and HOOD, District Judge.[*]

GRIFFIN, Circuit Judge.

In this action, plaintiff CLARCOR, Inc. ("Clarcor") filed suit against defendant Madison National Life Insurance Company ("Madison"), asserting that Madison wrongfully denied Clarcor's insurance-coverage claim. Upon cross-motions for summary judgment, the district court held that Clarcor was not entitled to coverage. The district court also denied Clarcor's motion to alter or amend the judgment. This timely appeal followed. Upon review, we affirm.

I.

The undisputed facts of this case were summarized by the district court as follows:

This is an insurance coverage dispute between Clarcor, the insured, and Madison, the insurer. Clarcor, which is a filtration services and products company, provided health

---

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

insurance for its employees through the self-funded "Henderson Hourly Union Medical Plan" (the "Plan"). To insure against major employee health care expenses incurred under the Plan, Clarcor obtained from Madison an Excess Loss Insurance Policy (the "Policy"), which was effective for the period of January 1, 2009[,] through December 31, 2009. The Policy covered "eligible expenses" incurred by Clarcor under the Plan from January 1, 2008[,] to December 31, 2009[,] and "eligible expenses" paid under the Plan from January 1, 2009[,] through December 31, 2009. Under the Policy, each "covered person" was subject to a $250,000 deductible; that is, Clarcor was insured by Madison for expenses or "losses" under the Plan in excess of $250,000 per Plan beneficiary, per year.

This dispute centers on Plan eligibility, and the definitions and limitations of certain Policy and Plan terms and provisions are important. A "covered person" under the Policy is "an individual eligible for coverage, and covered under the Plan." For present purposes, covered persons largely consisted of Clarcor employees and their dependents. "Losses" or "eligible expenses" under the Policy do not include "any payment [by Clarcor] which does not strictly comply with the provisions of the Plan," that has been "received and accepted" by Madison. That is, Madison agreed to cover Clarcor's excess Plan losses, but only if those losses were covered under the Plan that Madison had reviewed and approved.

Under the section titled "Who Is Eligible," the Plan states that "you are eligible to participate in this plan if you are a regularly assigned, full-time employee of Clarcor for at least 3 consecutive months and are regularly scheduled to work a minimum of 40 hours per week." For employees, the Plan states that "coverage ends the earliest of: the date your employment with Clarcor ends; the date contributions cease; the date you are no longer eligible to participate in this plan; the date you voluntarily terminate coverage during open enrollment or special enrollment; or the date this plan terminates."

Another section of the Plan titled "General Enrollment Requirements and Election Information" allows beneficiaries to make "enrollments elections" or changes to their Plan coverage if the beneficiary has a "change in status." This change in enrollment must take place within 30 days of the "qualifying" change in status. A series of qualifying changes, including termination, birth, death, and reduction in hours are listed. This section further provides that the change in enrollment must be "consistent with" the change in status and be tied to some gain or loss in eligibility for a beneficiary. "In other words . . . the election change must correspond with the effect on coverage."

The Plan also has Family and Medical Leave Act (FMLA) and COBRA provisions. The FMLA provision, in essence, provides that eligibility under the Plan will continue for the duration of leave, as long as the coverage continues to be paid for during that time. The COBRA provisions state that, consistent with federal law, when a "qualifying event" that would otherwise end the coverage occurs, "the plan offers optional continuation coverage." A series of "qualifying events," including termination of employment and "reduction in hours," are provided. If a beneficiary elects to receive COBRA coverage, that individual, in exchange for paying the premiums on the Plan, is allowed to remain covered by the Plan for a set period of time even through [sic] he or she would otherwise no longer be eligible for Plan coverage due to the "qualifying event."

This specific dispute arose because one of Clarcor's employees, I.K., incurred a considerable amount of health care costs . . . . The last day I.K. was "regularly scheduled" to work at Clarcor was October 20, 2007. At this time, I.K. was placed on FMLA leave, which continued until January 12, 2008. I.K. did not return to work after the expiration of her FMLA leave and was not offered COBRA coverage, but was, instead, placed on short-term disability. While on short-term disability, Clarcor continued to make benefit deductions from I.K's compensation for health insurance coverage and continued to submit I.K.'s name to Madison as one of the beneficiaries of the Plan. I.K.'s employment was terminated on June 23, 2008, and, the next day, for the first time, she was offered COBRA coverage by Clarcor.

I.K.'s health care costs during the relevant time period were well in excess of $250,000 and, in June 2009, Clarcor submitted a claim to Madison under the Policy. Madison raised concerns about coverage for Clarcor's expenses, suggesting that I.K.'s move to short-term disability had rendered her ineligible under the Plan. In discussions between Clarcor and Madison regarding this issue, Clarcor confirmed that it has a "corporate practice" of continuing benefit deductions for employees on short-term disability. On November 6, 2009, Madison, through its Policy administrator, informed Clarcor that it was denying Clarcor's request for reimbursement for I.K's expenses incurred after January 12, 2008, that is, after I.K. came off of FMLA leave and went onto short-term disability.

On February 24, 2010, Clarcor filed its [c]omplaint, seeking a declaratory judgment that Clarcor's "excess" expenses for I.K. were covered under the Plan and reimbursable under the Policy and, on the same theory, asserting a claim for breach of contract against Madison.

*Clarcor, Inc. v. Madison Nat'l Life Ins. Co.*, No. 3:10–189, 2011 WL 2682998, at \*1-3 (M.D. Tenn. July 11, 2011) (internal citations and footnote omitted).

Following discovery, the parties filed cross-motions for summary judgment. Thereafter, the district court held that Clarcor was not entitled to coverage under the Policy because I.K. ceased to be eligible under the Plan when she went on short-term disability leave, and, therefore, her medical expenses were not reimbursable under the Policy.

Clarcor then filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). Therein, Clarcor asserted that the district court did not adequately address its claim that Madison was obligated to reimburse Clarcor for medical expenses incurred during I.K.'s COBRA coverage.[1] The district court denied the motion, holding that because I.K. lost Plan coverage upon the termination of her FMLA leave, COBRA should have been offered within 30 days of that termination. Because COBRA was not timely offered, and because I.K. lost her Plan eligibility, the district court held that I.K.'s medical expenses were not recoverable under the Policy. This timely appeal followed.

II.

We conduct a de novo review of the district court's summary judgment order. *Med. Mut. of Ohio v. k. Amalia Enters. Inc.*, 548 F.3d 383, 389 (6th Cir. 2008). "In reviewing a grant of summary

---

[1]COBRA stands for the Consolidated Omnibus Budget Reconciliation Act of 1985. 29 U.S.C. § 1161, *et seq.* Under COBRA, an employee is entitled to elect continued health care coverage for a period that commences when the employee would otherwise lose coverage under an employer's health care plan. 29 U.S.C. §§ 1161, 1165.

judgment on cross-motions seeking such relief, we apply the same legal standards as the district court: whether, with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to a judgment as a matter of law." *United States v. Petroff–Kline*, 557 F.3d 285, 290 (6th Cir. 2009); *see* Fed. R. Civ. P. 56(a). "Although we generally review a grant or denial of a motion to alter or amend a judgment under Rule 59(e) for abuse of discretion, when the Rule 59(e) motion seeks review of a grant of summary judgment, we apply a *de novo* standard of review." *Am. Civil Liberties Union of Ky. v. McCreary Cnty., Ky.*, 607 F.3d 439, 450 (6th Cir. 2010). Because we are exercising diversity jurisdiction over this matter, we must apply state substantive law. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). It is undisputed that Tennessee law applies.

"It is elementary in insurance law that a claimant under an insurance policy has the initial burden of proving that he comes within the terms of the policy. . . . Conversely, the insurer carries the burden if it claims that one of the policy exclusions applies to the claimant and prevents recovery." *Blaine Const. Corp. v. Ins. Co. of N. Am.*, 171 F.3d 343, 349 (6th Cir. 1999) (internal quotation marks and citation omitted) (applying Tennessee law). "[I]n the absence of any ambiguity, it is our duty to take the ordinary meaning of the words used, favoring neither party in their construction." *State Farm Fire & Cas. Co. v. White*, 993 S.W.2d 40, 43 (Tenn. Ct. App. 1998) (internal quotation marks and citations omitted). "Where there is an ambiguity or uncertainty with regards to the terms of an insurance policy, the court must interpret the terms strictly against the

drafter of the policy." *Tenn. Farmers Mutual Ins. Co. v. Tait*, 20 F. App'x 503, 506 (6th Cir. 2001) (per curiam) (applying Tennessee law).

III.

As its primary argument on appeal, Clarcor asserts that I.K. was at all relevant times an "eligible" employee under the Plan and, therefore, her medical expenses paid by Clarcor are recoverable under the Policy. We disagree.

The plain and unambiguous terms of the Plan demonstrate that I.K. was not eligible for Plan coverage following the commencement of her short-term disability leave. Indeed, eligibility is expressly limited to "regularly assigned, full-time employee[s] . . . regularly scheduled to work a minimum of 40 hours per week." The only persons exempt from this requirement are: (1) qualified retirees; (2) employees on FMLA leave; and (3) employees receiving COBRA coverage. No exception is made for employees, such as I.K., who commence short-term disability leave.

Clarcor disputes this reading of the Plan, making several unpersuasive arguments. First, Clarcor asserts that the eligibility requirements described above merely refer to "initial eligibility" and not continuing eligibility. This argument is easily rejected. There is no indication that the "who is eligible" provision concerns initial, as opposed to general, eligibility requirements. Indeed, the Plan contains a separate section that sets forth "when coverage begins." It is nonsensical for the Plan to contain two separate sections on initial eligibility. Accordingly, when read in context, it is clear that the full-time employment requirement pertains to general, continuing eligibility under the Plan.

Next, Clarcor asserts that while short-term disability leave *may* result in the loss of coverage, an employee can *choose* to retain Plan coverage under the "general enrollment requirements and election information" clause, which provides:

> If you have a qualifying change in your status, you *may* change your enrollment decision within 30 days of the change in status . . . . Your change in enrollment election must be consistent with your change in status. In other words, you may only change your election if the change in status causes you . . . to gain or lose eligibility for coverage under this or another plan, and the election change must correspond with the effect on coverage. . . .
>
> A qualifying change in status includes . . . a change in employment status, such as reduction or increase in hours of employment . . . or commencement or return from an unpaid leave of absence.

(Emphasis added.) Clarcor asserts that because an employee "may" change his or her status upon the occurrence of a qualifying event, I.K. had the discretion to retain full coverage during her short-term disability leave.

This argument makes little sense. First, an employee loses coverage under the Plan on "the date [the employee is] no longer eligible" under the Plan. And, as noted above, I.K. lost her eligibility when she commenced her short-term disability leave. Moreover, the "general enrollment" provision is clear in that it only allows employees to elect a change in enrollment status that corresponds with their changed circumstances. In this case, I.K. lost her eligibility under the Plan because of her reduction of hours, allowing her to elect COBRA coverage. Under the plain language of the Plan, I.K. had no other coverage options.

Clarcor next asserts that I.K. was covered under the Plan because Clarcor signed an "actively at work" waiver. However, this waiver, contained in the *Policy*, in no way affects *Plan* coverage.

- 7 -

And, I.K. must be eligible under the Plan for her expenses to be reimbursable under the Policy. The "actively at work" waiver unambiguously applies to Section 4 of the Policy, which would otherwise exclude *Policy coverage* for employees who were not actively at work on the date coverage under the Policy began. Accordingly, by signing the waiver, Clarcor employees on FMLA leave or receiving COBRA coverage would still be covered under the Policy even though not actively at work on the date coverage commenced. This waiver in no way implicates the full-time employment requirement of the Plan.

Clarcor next contends that I.K. was eligible for coverage under the Plan because she continued to pay her premiums, and Clarcor, in turn, continued to pay premiums to Madison. This argument is easily rejected. When Madison was accepting these premium payments, it was not aware that I.K. was no longer eligible under the Plan. Accordingly, the acceptance of premium payments does not constitute some sort of admission or waiver. More importantly, the Policy clearly states that Madison will not reimburse Clarcor for liabilities assumed but not covered by the Plan. ("Loss or Losses does not include . . . any payment which does not strictly comply with the provisions of the Plan."). The acceptance of premiums does not alter the unambiguous coverage requirements of the Plan and Policy.

Finally, Clarcor asserts that language contained in a Plan claim form establishes that a "leave of absence" does not necessarily result in a loss of coverage under the Plan. This claim form, however, is not incorporated into the Plan. Accordingly, it is parol evidence that will not be considered. *See Kiser v. Wolfe*, 353 S.W.3d 741, 749-50 (Tenn. 2011) ("Because the document sets

out the extent of coverage in an unambiguous manner, there is no reason to . . . consider parol evidence.") (footnote omitted); *Airline Constr. Inc. v. Barr*, 807 S.W.2d 247, 259 (Tenn. Ct. App. 1990) ("Under the parol evidence rule parol evidence is inadmissible to contradict, vary, or alter a written contract where the written instrument is valid, complete, and unambiguous, absent fraud or mistake or any claim or allegation thereof."). Moreover, even if the claim form did constitute appropriate evidence, the district court was correct in noting that the document appears to be a generic form with little evidentiary value. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (holding that a nonmoving party must present more than a "mere . . . scintilla" of evidence to withstand a motion for summary judgment). Accordingly, the district court correctly held that I.K. lost her Plan eligibility when she went on short-term disability leave and, therefore, medical expenses incurred after that time, paid by Clarcor, are not reimbursable under the Policy.

IV.

Arguing in the alternative, Clarcor contends that even if I.K. were ineligible for coverage under the Plan while on short-term disability, she was eligible during her period of COBRA coverage. We disagree. Because I.K. lost Plan eligibility during her short-term disability leave, she was not eligible to receive COBRA coverage when it was offered. To be eligible for COBRA coverage under the Plan, "an individual must be a covered person . . . on the day before the qualifying event." A "qualifying event" is an event causing the employee to otherwise lose healthcare coverage, such as a "reduction in hours" or "termination." Here, Clarcor asserts that I.K.'s termination constituted the qualifying event. However, because I.K. was not covered by the

Plan during her short-term disability leave, she was not a covered person the "day before" the alleged qualifying event. Thus, I.K. was not eligible to receive COBRA coverage at that time. Rather, I.K.'s "qualifying event" was the termination of her FMLA leave. COBRA coverage should have been offered at that time.

Because the sequence of events precludes I.K.'s coverage under the Plan for the medical expenses at issue, Clarcor requests the court to create a fiction. Specifically, it requests that we assume that COBRA coverage was offered immediately after I.K.'s FMLA leave, requiring Madison to reimburse Clarcor for the expenses it would have incurred during that time. This we cannot do. Indeed, Clarcor offers no authority providing relief based upon a fictional, timely offer of COBRA coverage.[2]

Moreover, even if I.K. was somehow eligible to receive COBRA coverage when she did, the medical expenses incurred during that time are expressly excluded by the Policy. Exclusion number nine provides: "this Policy will not cover . . . [e]xpenses for any COBRA continuee or retiree whose continuation of coverage was not offered in a timely manner or according to COBRA regulations." In this case, as described above, Clarcor should have offered COBRA coverage to I.K. upon the termination of her FMLA leave. *See, e.g.*, *Jordan v. Tyson Foods, Inc.*, 257 F. App'x 972, 980 (6th Cir. 2007) ("An FMLA leave can result in a qualifying event if an employee who does not return from FMLA leave (1) was covered under her employer's health plan the day before taking FMLA

---

[2]Madison asserts that even if I.K. properly received COBRA coverage, Medicare would have been the primary payer, not the Plan. However, we need not address this issue because I.K. was not eligible for the COBRA coverage she received.

leave, (2) does not return to employment at the end of the FMLA leave, and (3) would lose health coverage in the absence of COBRA continuation coverage."). Such coverage was not offered at that time, and, therefore, the latter offer of COBRA coverage was untimely. Accordingly, medical expenses incurred by Clarcor as a result of its untimely offer of COBRA coverage are excluded under the Policy.

In sum, Clarcor cannot avoid the consequences of Plan and Policy language by offering insurance coverage not otherwise provided by the Plan. Indeed, the Policy expressly provides that Madison is not responsible "for any liability [Clarcor] assume[s] under any contract or agreement other than the Plan." *The Majestic Star Casino, LLC v. Trustmark Ins. Co.*, 667 F. Supp. 2d 809, 816 (N.D. Ill. 2009) ("[I]t is the terms of the plan that control here, not Majestic's interpretation or implementation of the plan."). Madison cannot be forced to reimburse Clarcor for payments made to an ineligible employee.

V.

For the foregoing reasons, we affirm the judgment of the district court.